IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.                                                                         20-MR-00077

PATRICK SILEO,

                      Defendant.

---

## THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S APPEAL OF MAGISTRATE COURT'S DETENTION ORDER[1]

### PRELIMINARY STATEMENT

During oral argument on defendant's motion to reopen the detention hearings, defense counsel posited that "[t]he biggest factor here in risk of flight is what is he fleeing from?"[2] Defense counsel is correct. In assessing whether this defendant poses a serious risk of flight, we must assess from what the defendant is fleeing. The answers in this case are abundant and undisputed: substantial debt; a potential felony conviction; return to a family living in South East Asia; ties to a 2014 child pornography investigation; zero significant ties to the United States, among others. The defendant's criminal conduct centers on him voluntarily exiling himself and **fleeing the United States**. The criminal conduct centers on him deceiving and departing the United States for his own gain. Put simply, defense counsel's argument that defendant suddenly has incentive to remain in the United States strains credulity.

---

[1] Defense counsel characterizes this motion as one appealing the Magistrate Judge Roemer's detention order. For clarity, the motion should be described as a motion for revocation or amendment of the order. *See* 18 U.S.C. 3145(b).
[2] Attached hereto as **Exhibit T2** is a true and correct copy of the Transcript of the February 24, 2020 proceedings before Judge Roemer.

Accordingly, this Court should affirm Judge Roemer's order detaining the defendant because he poses a serious risk of flight and no condition or combination of conditions can assure his appearance.

## BACKGROUND AND PROCEDURAL HISTORY

On January 7, 2020, defendant was arrested pursuant to a criminal complaint. *See* Magistrate Docket No. 1.[3]  On the same day, he appeared in the District of Nevada before the Honorable Magistrate Judge Daniel J. Albregts, who appointed Federal Public Defender Brandon Jaroch as counsel to defendant.  Defense counsel moved to adjourn the detention hearing one day, which the court granted.

On January 8, 2020, United States Pretrial Services Officer ("USPO"), Emily McKillip, provided Judge Albregts with a memorandum regarding defendant's detention hearing.[4]  In the memorandum, USPO McKillip assessed that the "defendant is viewed as a risk of nonappearance and danger to the community based upon: 1. The nature of the instant alleged offense; 2. Unstable residence history; 3. Lack of suitable residence; 4. Lack of employment; 5. Unknown passport information; 6. Alleged foreign ties; 7. Foreign travel 8. Lack of financial or property ties to this or any other community; 9. Mental health history; and 10. Information provided by the AUSA."  Based on these **ten factors**, USPO McKillip recommended that the defendant "be detained as a risk of nonappearance and danger to the community, as there is no condition or combination of conditions that would reasonably assure defendant's appearance at future court proceedings or the safety of the community."

---

[3] The government's reference to "Magistrate Docket" pertains to the 20-mj-5004 docket.
[4] The Pretrial services report (originally prepared in the District of Nevada and adopted by this District) has not been attached as an exhibit to this filing.  The government will provide the Court with a copy of the report should Pretrial Services not do so.

In support of this recommendation, USPO McKillip attached the defendant's pretrial services report ("PSR").

After the detention hearing, Judge Albregts ordered defendant detained. In his detention order, the judge held that "[i]n addition to any findings made on the record at the hearing, the reasons for detention include the following: lack of stable employment; lack of stable residence; lack of significant community or family ties to this district; and significant family or other ties outside the United States. *See* Magistrate Docket No. 2 at 9-10. On February 7, 2020, defendant appeared before this Court and expressed his intent to file a motion to reopen the detention hearing based on change in circumstances. Defendant filed said motion on February 11, 2020, where he argued "that he c[ould] reside at 455 Elmwood Avenue, Niagara falls, New York, with a friend and acquaintance, Annette Ray," and, therefore, that he was entitled to release. *See* Magistrate Docket No. 4. The government responded in opposition arguing that the defendant remained a serious risk of flight. *See* Magistrate Docket No. 5.

On February 13, 2020, Judge Roemer heard oral argument on the defendant's motion.[5] The defendant asserted that because he had a tenuous connection (a friend of a friend) who offered him a place to stay, that the Court should disregard the ten other factors identified by Judge Albregts and order his release. The government argued that the defendant should remain detained.

On February 24, 2020, Judge Roemer heard further oral argument. Defendant proffered what he termed "additional new information," – none of which was "new" and all

---

[5] Attached hereto as **EXHIBIT T1** is a transcript of the proceedings before Judge Roemer on February 13, 2020.

of which pertained to 10-20 years ago.  *See* Exhibit T2 at 7-9.  After carefully assessing the § 3142(g) factors, Judge Roemer concluded that defendant should remain detained because he posed a serious risk of flight and no condition or combination of conditions would reasonably assure his appearance.  *See id.*  Following the hearing, Judge Roemer issued an Order of Detention Pending Trial.  *See* Magistrate Docket No. 8.

On February 27, 2020, the defendant filed the instant appeal pursuant to 18 U.S.C. § 3145(b).  Because "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required," 18 U.S.C. § 3142(e)(1), the government hereby submits this response in opposition to defendant's appeal and asks this Court to affirm Judge Roemer's detention order.

## STANDARD OF REVIEW

Review of a magistrate judge's release order is *de novo*.  Pursuant to 18 U.S.C. 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file . . . a motion for revocation or amendment of the order."  The Court should "not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Leon*, 766 F.2d at 77, 80 (2d Cir. 1985).  Moreover, "[w]hen making its de novo review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence."  *United States v. Fernandes*, 50 F. Supp. 3d 406, 409 (W.D.N.Y. 2014), *aff'd* (Dec. 8, 2014), *quoting United States v. Marra*, 165 F.Supp.2d 478, 481 (W.D.N.Y. 2001).

When the government's motion for detention is based upon a risk of flight assessment, the government must establish, by a preponderance of the evidence, "the defendant, if released, presents an actual risk of flight." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (citation omitted).  When the government's motion for detention is based upon the

4

defendant's dangerousness, it "has the burden of establishing defendant's dangerousness by "clear and convincing evidence." *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985); *see also* 18 U.S.C. § 3142(f).  Here, the government's motion for detention has been, and remains, premised on the position that this case involves "a serious risk that [the defendant] will flee." *See* 18 U.S.C. § 3142(f)(2)(A).

Once the government has established the defendant is either a risk of flight or a danger to any other person or the community, the government must next establish that there is no condition or combination of conditions that could be imposed on the defendant that would reasonably assure his presence in court, by a preponderance of the evidence, or reasonably assure the safety of any other person and the community, by clear and convincing evidence. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d. Cir. 2007); 18 U.S.C. § 3142(f).

## ARGUMENT

**I.   DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT.**

In making a determination as to whether a person should be held without bail, 18 U.S.C. § 3142(g) sets out criteria which the court must consider.  Those factors, in relevant part, include:

 (1)    the nature and circumstances of the offense charged;

 (2)    the weight of the evidence against the person;

 (3)    the history and characteristics of the person, including:

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, and community ties.

18 U.S.C. § 3142(g).  A review of these factors, as applied to the facts in the present case, proves beyond a preponderance of the evidence that there are no conditions that would

reasonably assure the appearance of the defendant in this district, and as such, the Court should affirm Judge Roemer's detention order.

### A. The Nature and Circumstances of the Charge Weigh in Favor of Detention.

The defendant is charged with attempting to buy a United Kingdom Passport on the dark web. Indeed, defendant contacted an HSI undercover agent (UCA) to inquire about purchasing the fraudulent passport. In so doing, the defendant stated that he was "a U.S. citizen, currently in the USA, having returned from SE Asia some months ago. I have a USA passport that will expire in one week. My current passport is blocked by the tax authorities (IRS) from being renewed. It is my desire to return to my 'wife' and family in SE Asia." Attached hereto as **EXHIBIT A** is a November 11, 2019 email from the defendant to the UCA. Defendant proposed three ideas to the UCA, one of which included "[o]btain[ing] a passport under a different name for travel. Either keep the new identity in SE Asia (inconvenient, but possible) or get a new USA Passport for entry (but not for travel)." *Id.* In a separate email, defendant indicated that he would use the passport "to go to se asia and not for any other travel. It will be my primary identity document. I assume I will need your services again in 10 years when it is time to renew." Attached as **EXHIBIT B** is a November 12, 2019 email from defendant to the UCA. Defendant agreed to purchase a United Kingdom Passport and deposited bitcoin in an escrow account. He rented a mailbox from a private mailbox facility in Las Vegas Nevada and provided that address to the UCA for delivery of the fraudulent passport. HSI arrested defendant as he put the package in his bag.

As Judge Roemer correctly held, the nature and seriousness of this charge weighs in favor of detaining the defendant. By his own words, defendant attempted to procure a fraudulent passport so that he could return to his family in South East Asia and remain there.

6

Furthermore, "apparent access to false documents" supports a finding that defendant poses a flight risk. *See U.S. v. Baig*, 536 F. App'x 91, 93 (2d Cir. 2013) (citing *United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000)). There can be no stronger evidence of risk of flight than the defendant's own words evincing his intention (and seeming ability despite United States law) to exile himself from the United States.

Defendant asserts that "[i]f [the] facts alleged by the Government are true, Mr. Sileo lacks the means to leave the country, contradicting any argument that he is a 'serious' risk of flight. Indeed, access to any alternative international travel documents would be wholly inconsistent with the Government's apparent theory of the case: that Mr. Sileo needed to explore illicit channels to obtain fraudulent documentation in order to leave the country." Docket No. 1 at 8. Of course, this proposition rests on the false notion that a defendant is only a flight risk if he can flee internationally. That this defendant has no travel documents (to our knowledge) does not mean that he cannot flee within the United States, nor does it mean that he cannot and will not assume some false identity through any number of means, the internet being only one of many. He has shown a clear propensity to do so. Accordingly, the nature and circumstances of the offense weigh in favor of detention.

### B. The Weight of the Evidence is Strong and Weighs in Favor of Detention.

The weight of the evidence against the defendant is strong. Defendant states that "[t]he weight of the evidence against an individual can be a relevant factor in evaluating risk of flight, *if an individual is facing a lengthy prison sentence if convicted*." Docket No. 1 at 7 (emphasis in original). Although weight of the evidence may not be the most important factor (*see U.S. v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008)), its consideration is not conditioned on whether the individual is facing a lengthy prison sentence. *Sabhnani* does not support

defendant's novel interpretation; the court simply stated that defendant had a motive to flee because of the lengthy prison term. 493 F.3d 63 at 73 ("The district court observed an order of detention was further supported by the strength of the evidence **and** the lengthy prison terms they would face if convicted." (emphasis added)).

"The second factor of § 3142(g) – the weight of the evidence against a person – **requires** the district court to consider evidence proffered by the government which it intends to use at trial." *United States v. Routollo*, No. 87 CR 813, 1988 WL 147354, at *3 (E.D.N.Y. July 8, 1988) (internal quotation marks omitted) (emphasis added). Here, the weight of the evidence is strong and weighs in favor of detention. The government has the defendant's emails to the UCA ordering the fraudulent passport. Defendant placed bitcoin in an escrow account to confirm the purchase. He provided the UCA with a mailing address and was then arrested at that mailing address as he placed the fraudulent passport in his bag.

Defense counsel repeatedly asserts that defendant's potential guideline range of 0-6 months assuages the ten other risk factors identified by Judge Albregts and then by Judge Roemer. With respect to the weight factor, that amount of time defendant may serve is not as important as the fact that defendant now faces a felony conviction (and the collateral consequences of such a convictions). If he had no motive to remain in the United States prior to a felony charge, he certainly will have no incentive to remain to face the charge. Defendant essentially asks this Court to ignore the **ten other** risk factors and to view his **potential** guideline range of 0-6 months as dispositive on the issue of detention (and cites no authority for this proposition). Doing so contravenes the Bail Reform Act and the principles imbedded in the § 3142(g).

### C. The History and Characteristics of the Defendant Weigh in Favor of Detention

#### 1. Defendant Has No Ties to the Community — Family or Otherwise.

Defendant has no significant ties to this community — or seemingly to any other community in the United States for that matter. Indeed, the defendant is a 62-year-old transient. Since 2014, he told Pretrial Services (in vague terms) that he lived in "Southeast Asia (Cambodia, Thailand, and Vietnam)." He returned to the United States in May 2019 and resided in California from May 2019 to July 2019. From July 2019-present he has been residing in Airbnb's in Las Vegas where he has been "playing cards." He told Pretrial Services that "[i]f released . . . he would gather his belongings and relocated to his brother's residence or 'stay nearby' his brother's residence in California." Defendant's brother, however, stated that defendant could not reside with him. Critically, "[t]he defendant could not remember any phone numbers for a collateral source to verify his background information."

In his motion to reopen and/or motion to revoke, Defendant argued that he had new information regarding a suitable residence. He asserted that he had a friend and acquaintance in the Western District of New York with whom he could reside. As such, defendant contended that the change in circumstance warranted release. Furthermore, defendant disingenuously argued that "[t]here [were] indications in the documents provided by Pretrial Services that a significant factor in Judge Albregt's decision [to detain defendant] was the lack of a suitable residence at which Mr. Sileo could be supervised." Magistrate Docket No. 4 at 2.

During oral argument, however, defense counsel conceded that defendant's relationship with Ms. Ray was tenuous — at best — and that she was a "friend of a friend." He did not know her directly. Moreover, even after defense counsel said that he had spoken

9

with Ms. Ray at least four times, and encouraged her to answer any call from Pretrial Services, Ms. Ray failed to do so. Nor did defense counsel address his representation that lack of a suitable residence was a "significant" factor to Judge Albregt's decision.[6] Even if that were true (which it patently was not), defendant's proposed residence was far from suitable.

Aside from a strained relationship with his brother,[7] the defendant has no other family ties in the United States. He reported three separate marriages: Robin Gee (1983 - ?); Helena Estes (1985-1994); and Lisa Herter (1997 or 1998 to 2005). Ms. Gee is deceased and defendant does not have contact with Ms. Estes or Ms. Herter.[8] Curiously, during oral argument on February 13, 2020, defendant stated that he was presently married to Ruth Sileo. He did not report the marriage to pretrial services. *See* Exhibit T1 at 11. Beyond stating that he was still married to Ms. Sileo, defendant failed to address why he omitted the marriage from his pretrial services interview. In addition, defendant failed to address his statement to the UCA, referenced above, that he had a wife and children in South East Asia. *Id.* at 11 ("THE COURT: He's still married to Ruth. And the government is - - or in the pretrial services report there's mention that he might have another wife and family in Southeast Asia. MR. ANZALONE: I did see that in there. I did see that. What I can say is that Mr. Sileo is

---

[6] Probation also addressed this misrepresented by defense counsel stating that "[t]he defendant would have the Court believe that he was ordered detained purely because he did not have a stable residence. **This could not be further from the truth.** In the memorandum dated January 8, 2020, there are ten separate flight risk factors identified. The proposed residence, if approved, would only mitigate one of them." (emphasis added).
[7] Defense counsel described defendant's brother as "estranged" during oral argument. Exhibit T2 at 14. The defendant, however, reported a "good relationship with his brother Edward Sileo," to Pretrial Services.
[8] He also shares a 21-year-old child with Ms. Estes, with whom he has no contact. In addition to this child, he has another adopted child in Maryland with whom he has not contact.

10

a U.S. citizen."). Notably, defendant did not contest the fact that he has two families, one located in South East Asia to whom he was desperately trying to return.

Defendant has no ties to this country, let alone this community. Furthermore, defendant has expressed his desire to return to his apparent second family in South East Asia. This factor, then, weighs in favor of detention.

### 2. Defendant Has an Unstable Residence History.

As referenced above, defendant's residential history in the United States (and abroad) can be characterized as spotty and sporadic at best. Domestically, defendant's residential history is as follows: California (birth – 9 months); Connecticut (1958 – 1970); California (1970 – 1985); New York (1985 – 1989); Pennsylvania (1989 – 1992); Massachusetts (1993 – 1997); Maine (1997 – 2000); Pennsylvania (2000 – 2007). From 2007 – 2014, he told Pretrial Services that he was "back and forth between the United States and Qatar from 2007 to September 2014." From September through May 2019, defendant resided somewhere in Southeast Asia (Cambodia, Thailand, and Vietnam). He reported additional internal travel to Japan/Korea (1981 or 1982); Belgium/France (1990s); and the United Kingdom (1990 or 1991).

To "rebut" this blatant history of unstable residence, "the defense has obtained property reports that confirm that Mr. Sileo owned a home in Pittsburg from 2000 (when he purchased the home) until 2015 (when his mortgage went into default)." Docket No. 1 at 5. That defendant owned a home, which went into default, in **one** of the many locales he lived over 40 years, does not discount his otherwise disparate and diverse residence history. To the contrary, such evidence underscores this point.

11

Defendant states that he has not lived a "traditional life" and that he "has traveled and lived overseas, including recently in Southeast Asia." He asserts, however, that "[n]one of this is a reason for detention of a 62-year-old man with no record facing a likely sentence of time-served or probation." Docket No. 1 at 6. But extensive travel and ties to foreign countries are both strong factors indicating that defendant is a flight risk. *See Baig*, 536 F. App'x at 93 ("A history of travel and residence in other countries is another factor that we have approved in the determination whether a defendant is likely to abscond while on bail." (internal quotation marks omitted) (citing to *El–Hage,* 213 F.3d 74, 80 (2d Cir.2000) and *United States v. Mercedes,* 254 F.3d 433, 438 (2d Cir.2001))). Defendant's proposition that he can reside at the Buffalo City Mission does not adequately mitigate this factor as to permit his release. Because defendant has an unstable residence history and extensive foreign travel and ties, this factor weighs in favor detention.

### 3. Defendant is Unemployed.

Defendant informed Pretrial Services that he has been retired since 2014 and "has been financially supported through his retirement funds and 'playing cards.'" That the defense put forth evidence of his previous employment, more than six years ago, does not change this fact, which weighs in favor of detention.

### 4. Defendant Has Ties to a Prior Child Pornography Investigation.

Defendant has ties to a 2014 Pennsylvania state child pornography investigation. This information was proffered to Judge Albregts by AUSA Christopher Chiou. On September 15, 2014, law enforcement executed a search warrant of defendant's residence in Pennsylvania. Defendant was abroad in Qatar at the time. His then-wife Ruth Sileo, was residing in the home. Ms. Sileo stated that her husband, Patrick Sileo, was in Qatar teaching,

12

but that he downloaded child pornography for her through the Ares filing sharing network. She further stated that Mr. Sileo masturbated in front of her to the child porn videos. ICE flagged Mr. Sileo's name so that a border search could be conducted on him upon his return to the United States. Defendant was expected to return to the United States on September 15, 2014 — significantly, he failed to check in for his flight and made no additional attempts to return to the United States until May 2019.

Although this investigation is closed, defendant's failure to return to the United States after the search warrant was executed is strong evidence that this defendant previously fled from law enforcement – just as he might if he is released on this case. Defendant, then, misses the mark in arguing that "[t]he prior existence of an *inactive, closed* investigation that resulted in no criminal charges [against the defendant who was out of the country and never returned] . . . cannot be said to now create a flight risk." Docket No. 1 at 6. Had the defendant returned, as planned, to the United States in September 2014, his argument might have some merit. But he never returned until May 2019, after which he began committing the instant federal crime. Simply put, defendant has fled before and will flee again. This favor weighs in favor detention.

### 5. Defendant Owes a Significant Debt to the IRS.

Defendant told Pretrial Services that he has an outstanding tax bill of $100,000. He similarly told the UCA that he owed a debt to the IRS, which is why he could not renew his United States passport in the first place. Defendant baldy argues that such a debt does not make him a serious risk of flight because "[p]lenty of people owe money to the IRS, and there are a number of ways to address these debts with the IRS." Docket No. 1 at 7. That may be true. It is, however, highly unlikely that "plenty of other people" have nine other risk factors

13

assessed against them in addition to a substantial IRS debt.  Defendant further asserts that "American citizens cannot be imprisoned by the IRS to force payment of their debts, and this well-known fact undercuts any argument that [defendant] would be tempted to flee the country to avoid this debt." *Id.*  The government agrees that, standing alone, this factor would not necessarily warrant detention.  But this factor **does not** stand alone in this case — it is accompanied by myriad other facts indicating that defendant has plenty of incentive to flee.

### 6. Defendant Possesses the Financial Means to Flee.

Despite his significant IRS debt, the defendant admits to have been living on his retirement money, which amounts to $80,000.  In addition, the defendant has at least one account bitcoin account, Coinbase, which contained as of July 2019 $50,000.  Attached hereto as **EXHIBIT C** is a wire transfer report from July 2019.  Defendant certainly has the financial means to flee, which weighs in favor of detention.

## II. NO CONDITION OR COMBINATION OF CONDITIONS WILL ASSURE DEFENDANT'S APPEARANCE.

Judge Roemer held that no condition or combination of conditions would assure defendant's appearance.  On appeal, defendant stated that he is unable to access his assets to post a cash bail, but that he is willing to sign an unsecured signature bond as collateral to ensure his future appearance in court.  Docket No. 1 at 9-10.  Respectfully, an unsecured signature bond — particularly with the defendant as the sole signatory — provides no incentive to the defendant to appear.  Judge Roemer rejected this argument as well and would consider a bond secured by significant collateral.  Exhibit T2 at 18.  Accordingly, there is no condition or combination of conditions that will assure defendant's appearance.

## **CONCLUSION**

On appeal, defendant fails to rebut the fact that not only does he present a serious flight risk, but that no condition or combination of conditions will assure his appearance. Accordingly, for the reasons stated above, the government respectfully requests that this Court affirm Judge Roemer's order of detention.

DATED: Buffalo, New York, March 6, 2020.

                                          JAMES P. KENNEDY, JR.
                                        United States Attorney

BY:     __/s Caitlin M. Higgins_____
           CAITLIN M. HIGGINS
           Assistant United States Attorney
           United States Attorney's Office
           Western District of New York
           138 Delaware Avenue
           Buffalo, New York  14202
           716/843-5818
           Caitlin.Higgins@usdoj.gov