UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                          20-MR-77

PATRICK SILEO,

            Defendant.

_____


## DECISION AND ORDER

The defendant, Patrick Sileo, has been charged in a one-count criminal

complaint with committing fraud in connection with an identification document, in

violation of 18 U.S.C. § 1028(a).  W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 1

(criminal complaint).  He has moved under 18 U.S.C. § 3145(b), Docket Item 1[1], to

revoke the February 24, 2020 order issued by Magistrate Judge Michael J. Roemer

detaining Sileo pending trial, W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 8.  For the

reasons below, and under 18 U.S.C. §§ 3142(e), 3142(g), and 3145(b), the defendant's

motion is DENIED.

---

[1] Unless otherwise noted, record citations are to documents filed in this case,
W.D.N.Y. Docket No. 20-MR-77.

## PROCEDURAL HISTORY

**The Criminal Complaint and Initial Detention Hearing – District of Nevada**

On January 3, 2020, Sileo was charged and an arrest warrant was issued. Four days later, on January 7, 2020, Sileo was arrested in the District of Nevada and appeared before Magistrate Judge Daniel J. Albregts for an initial appearance in a Federal Rule of Criminal Procedure 5(c)(3) proceeding. W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 2. During that appearance, the Federal Public Defender's Office was appointed to represent Sileo, and Sileo executed a waiver of an identity hearing. *Id.* At Sileo's request, the detention hearing was adjourned to January 8, 2020. *Id.* Following the detention hearing, Judge Albregts ordered Sileo detained pending his scheduled appearance in the Western District of New York on February 7, 2020, before Judge Roemer.

**Initial Appearance – Western District of New York**

Sileo made his initial appearance in the Western District of New York before Judge Roemer on February 7, 2020. W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 3. At that time, consistent with the finding of eligibility in the District of Nevada, the Federal Public Defender's Office was assigned to represent Sileo. *Id.* During that initial appearance, Sileo's counsel told Judge Roemer that he intended to file a motion to reopen the detention hearing held in the District of Nevada, and Judge Roemer set a February 11, 2020 deadline for filing that motion. *Id.*

**Motion to Reopen Detention Hearing**

Citing a change in circumstances, Sileo moved to reopen the detention hearing on February 11, 2020, W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 4, and the government responded on February 12, 2020, *id.*, Docket Item 5. Judge Roemer heard oral argument on February 13, 2020, and decided to treat the motion as a motion for release. *Id.,* Docket Item 6.

The change in circumstances cited by Sileo, both in his motion and at oral argument, was that there was now a suitable, stable residence in the Western District of New York where Sileo could reside—the residence of Annette Ray in Niagara Falls, New York. *See id.,* Docket Items 4 and 12. At that time, Ms. Ray was described as a friend and acquaintance of Sileo. *See id.,* Docket Item 12 at 3. But when asked by Judge Roemer, Sileo's counsel explained that other than speaking on the phone, Sileo had never even met Ms. Ray; rather, he knew a friend of Ms. Ray who had put the two of them in contact. *Id.* at 4. Judge Roemer characterized this proposed residence with a woman Sileo knows only through telephone conversations as not much better than "stay[ing] at the Hilton down the street." *Id.* at 5.

Sileo's counsel also argued that Sileo should be released because, if convicted, he faces an advisory United States Sentencing Guideline range of only zero to six months imprisonment. *Id.* at 6. Further, counsel asserted that Sileo, a 62-year old man with no criminal history and no valid passport or international travel documents, had no means to flee. *Id.* at 6-7.

When pressed, counsel conceded that Sileo faced a statutory maximum sentence of 15 years imprisonment. *Id.* Judge Roemer observed that Sileo owes the

Internal Revenue Service $100,000 and has a retirement account of $80,000, noting that these gave him both a reason and possible means to flee. *Id.* at 8-10. Judge Roemer also noted that as reflected in the bail report, Sileo apparently has two families, one here in the United States and one in Southeast Asia. *Id.* at 11. Finally, the government confirmed that there had been a child pornography investigation involving Sileo in 2014 and that a be-on-the-lookout had been issued for Sileo. *Id.* at 12-13.

The government, Judge Roemer, and the probation officer all expressed concern about the proposed residence. *Id.* at 17-18. At the conclusion of the February 13, 2020 detention hearing, Judge Roemer directed the probation officer to speak with Ms. Ray. *Id.* at 22. Judge Roemer also requested additional information concerning how much money Sileo owes the IRS; the child pornography investigation; and Sileo's alleged employment at Carnegie Mellon University. *Id.* The detention hearing was adjourned until February 24, 2020.

**Continuation of Detention Hearing**

On February 24, 2020, the prosecutor reported that without an ex parte tax order she was unable to learn exactly how much money Sileo owed the IRS; the IRS confirmed, however, that based on the type of "hold" on the defendant's passport, the amount due to the IRS must be at least $100,000. W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 11 at 3. Through a grand jury subpoena, the government also was able to learn that Sileo had "a significant amount of money in a Bitcoin bank account." *Id.* Finally, the government reported that there had been a travel alert placed on Sileo while the child pornography investigation was pending, but that the investigation was now closed. *Id.* at 5.

4

The probation officer reported that he made two attempts to reach Ms. Ray but that both were unsuccessful; he also reported that his request to Carnegie Mellon for employment information was still outstanding. A search of Carnegie Mellon's website revealed that Sileo was employed there beginning in 1999, but no end date was listed. *Id.* at 6. Sileo's counsel advised that Sileo had been employed by the Harvard Business School from 1994-1999 and by Carnegie Mellon from 2000-2014. *Id.* at 7-8. Sileo's counsel also advised that Sileo had maintained a stable residence—a home he owned in Pittsburgh, Pennsylvania—from 2000-2015. *Id.* at 8.

At the conclusion of the continuation of the detention hearing, Judge Roemer found by a preponderance of the evidence that Sileo was a serious risk of flight and ordered him detained. *Id.* at 19. Judge Roemer gave several reasons for his decision:

> He faces a substantial sentence in this case; he owes the IRS apparently a large debt; he has another family apparently in Cambodia; he may or may not have some kind of ties with a child pornography incident that happened several years ago; when he spoke with probation, he made either – he left things out when he spoke to probation or he made statements or rather as if he were avoiding trying to provide correct information; he never mentioned his wife Ruth, who apparently was part of this child pornography issue; he gave his legal residence as his brother's house; apparently there may be as much as $50,000 in a Bitcoin account which he never mentioned to the probation office.
>
> Also the nature and circumstances of this offense seems to be he was trying to obtain a false ID for the purposes of travel. He has no – the only condition I might release him under is a substantial – posting of a substantial bail. He has no resources apparently for bail.
>
> Based on all these factors – well, I should say the other factor is he wants to stay with the woman whose last name is Ray here in Buffalo. We've been unable to contact this woman. And even then, it's a very tenuous relationship. She's apparently the friend of a friend of his, and is not a

5

> relative or any kind of direct associate.  I don't know if he's
> even met her before.

*Id.*  Judge Roemer's written order of detention pending trial was filed the next day.  *Id.*, Docket Item 8.  Finally, Judge Roemer set a Rule 48(b) dismissal date of March 27, 2020.

**Appeal/Motion to Revoke**

On February 27, 2020, Sileo moved to revoke Judge Roemer's order of detention.  Docket Item 1.  Consistent with this Court's order, the government responded on March 6, 2020, Docket Item 3, and Sileo replied on March 9, 2020, Docket Item 4.  This Court first heard oral argument on March 11, 2020, when the Court reserved decision and scheduled further oral argument on March 30, 2020.  The Court directed Sileo's counsel to provide a specific and detailed plan for his release and to bring the person with whom Sileo would be living to the next court appearance. Although the Court did not require written submissions, the Court gave Sileo until March 23, 2020, to file an additional submission and the government until March 27, 2020, to respond.  Docket Item 5.

**Coronavirus Disease-2019 ("COVID-19") Pandemic**

On March 7, 2020, the Governor of the State of New York declared a disaster emergency in the State of New York in response to the COVD-19 pandemic.  On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the pandemic.  As a result, on March 13, 2020, Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, issued an order limiting court operations in the district.  Consistent with Chief Judge Geraci's March 13, 2020 order, on March 18, 2020, Judge Roemer rescheduled

the Rule 48(b) dismissal date and status conference from March 27, 2020, to April 27, 2020, and excluded all Speedy Trial Act time until April 27, 2020.  W.D.N.Y. Docket No. 20-MJ-5004, Docket Item 10.  Due to the significant progression of the COVID-19 pandemic throughout the Western District of New York, on March 18, 2020, Chief Judge Geraci issued a general order continuing all criminal jury trials until May 13, 2020, and encouraging the resolution of criminal motions without oral argument or a personal appearance.

**Proposed Conditions of Release**

Sileo proposed written conditions of release on March 23, 2020, Docket Item 6, and the government responded on March 27, 2020, Docket Item 7.  In his proposed conditions, Sileo reiterated his request for release with renewed urgency in light of the rapidly-evolving COVID-19 pandemic and due to his age—62 years.  *See* Docket Item 6.  Sileo proposed thirteen conditions of release, including:

2.  Execute an unsecured signature bond in the amount of $50,000.

3.  Do not obtain or attempt to obtain any passport or international travel documents.

4.  Remain at a residence verified and approved by Pretrial Services: specifically, 455 Elmwood Avenue (upstairs), Niagara Falls, New York 14301, a home owned by Ms. Annette Ray.

5.  Participate in the following location restriction program and abide by all requirements of this programs, which will be monitored by Global Positioning Satellite system (G.P.S.):

7

a. Home incarceration:  Mr. Sileo is to be restricted to his residence at all

times, except for medical needs and treatment, religious services, and

court-appearances pre-approved by the supervising officer.

Docket Item 6 at 2.  In connection with the proposed living arrangements, counsel

provided the following note:

> *[NOTE: As previously indicated, I have spoken with Ms. Ray on numerous occasions, at the phone number provided to Pretrial Services.  Most recently, I spoke with her on the date of this filing (3/23/20) and she again confirmed that Mr. Sileo would be welcome to reside, and be supervised, in the upstairs portion of her home at 455 Elmwood Avenue in Niagara Falls.  As relayed to Pretrial Services, this residence has an active landline.  It is the defense's understanding that Pretrial Services will reach out to Ms. Ray and verify this residence if instructed to do so by the Court.]*

*Id.* (italics in original).

In its response, the government argued that the proposed conditions were

identical to those proposed to and rejected by Judge Roemer.  Docket Item 7 at 1.  With

respect to COVID-19, the government suggested that Sileo may be safest if, as a

prisoner, he was generally secluded from the general public.[2]  *Id.*

The Court heard the continuation of oral argument by telephone on March 30,

2020, and, as directed, Annette Ray participated by telephone and answered the

Court's questions.  The Court learned that Ms. Ray had never met Sileo in person and

that she knew him only through another inmate with whom Sileo was detained. The

Court also learned that despite the probation officer's multiple attempts to contact Ms.

---

[2] Sileo does not seek release based on the COVID-19 pandemic; in fact, Sileo maintains that even in the absence of the COVID-19 pandemic, he should be released on the proposed conditions.  Whether the defendant may be safer in jail as the government suggests is not a factor this Court considered in reaching this decision.

Ray, the first time the probation officer ever heard her voice was during the telephone conference. At the conclusion of oral argument, the Court advised the parties that it was affirming Judge Roemer's decision to keep Sileo detained.

## APPLICABLE LAW

### A. Review of Detention Order

"If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The standard of review is *de novo*. *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (Summary Order) (citing *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985)). When conducting this review, "the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014) (quoting *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).

### B. Pretrial Detention

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1). "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the

9

safety of any other person and the community, take into account the available

information concerning—

> (1) the nature and circumstances of the offense charged . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Judicial findings under the statute require different standards of proof. A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence," 18 U.S.C. § 3142(f); on the other hand, a finding that a defendant poses a risk of flight may be supported by only a preponderance of the evidence. *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). But neither finding necessarily needs to be supported by testimony under oath, as it "is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

## ANALYSIS AND FINDINGS

In considering the issue of Sileo's detention or release, the only concern for this Court is whether Sileo poses a risk of flight; therefore, the Court's finding must be supported by a preponderance of the evidence.

### A. Nature and Circumstances of the Charged Offense

As noted above, Sileo has been charged in a criminal complaint with fraud in connection with identification documents. The criminal complaint alleges that through a "hidden service" website, Sileo contacted an undercover agent and sought to purchase a fraudulent passport. Sileo allegedly told the undercover agent that he had a United States passport that would be expiring in one week but that its renewal was blocked by the IRS; he also allegedly said that he would use the fraudulent passport to travel to Southeast Asia.

If convicted, Sileo faces a statutory maximum penalty of 15 years imprisonment and a $250,000 fine. The government has advised that its investigation is ongoing and, therefore, additional charges are possible. Moreover, the nature of the crime charged involves fraud and suggests flight. Accordingly, the nature and circumstances of the charge weighs in favor of remand.

### B. Weight of the Evidence

Based on the allegations outlined in the affidavit in support of the criminal complaint, Sileo's interactions with the undercover agent were all documented and preserved. Specifically, the government has Sileo's emails to the undercover agent ordering the fraudulent passport. Docket Item 3 at 8. In addition, Sileo placed bitcoin in an escrow account to confirm the purchase, and he provided the undercover agent with

11

a mailing address.  *Id.*  Sileo was later arrested at that mailing address as he placed the fraudulent passport in his bag.  *Id.*  As presented by the government, the weight of the evidence appears strong and also weighs in favor of remand.

### C. History and Characteristics of the Defendant[3]

Sileo has no ties whatsoever to this community.  Although he apparently has a wife, Ruth Sileo, here in the United States (a marriage he failed to disclose to Pretrial Services), he also apparently has a wife and family in Southeast Asia.  Sileo claims to have resided in Southeast Asia from 2014 until his return to the United States in May 2019.  From May to July 2019, he apparently lived somewhere in California, and from July 2019 to the time of his arrest, he apparently stayed in hotels and Airbnbs in Las Vegas, Nevada, while playing cards.

In support of his request for release, Sileo proposed living with a woman he has never met in person, but with whom he has only communicated by telephone; later, the Court learned that Sileo "met" the woman through another inmate with whom he currently was housed.  What is more, despite multiple attempts, the probation officer was unable to communicate with this woman, in fact hearing her voice for the first time during oral argument.

In addition, Sileo owes at least $100,000 to the IRS.  Although Sileo may not presently possess a valid travel document, the government has proffered that he has access to a retirement account and a Bitcoin account.  And as noted above, the very nature of the crime charged involves getting a fraudulent passport to travel abroad.

---

[3] The Court gives no weight to the government's assertion that Sileo was tied to a child pornography investigation. That investigation was closed, apparently without charges being lodged against Sileo.

On balance, and especially given Sileo's transient lifestyle; lack of any residence in the United States; two families, one in the United States and one in Southeast Asia; at least a $100,000 debt to the IRS; and a proposed residence with a woman he has never met, there can be little doubt that this factor weighs heavily in favor of remand.

**D. Nature and Seriousness of the Danger Posed to Person or Community**

As noted above, there is nothing in the record to suggest that the defendant poses a danger to any person or to the community. Rather, the only concern here is that the defendant poses a risk of flight if released.

## CONCLUSION

For the reasons set forth above and on the record on March 30, 2020, the Court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Sileo's appearance as required. If Sileo's counsel is correct that Sileo ultimately will face a Guidelines term of 0-6 months incarceration if convicted, then he may ask the Court to revisit the issue of detention at the appropriate time. But given the government's representation that its investigation is not yet complete, the Court is unwilling—indeed, it is unable—to reach that conclusion now. Therefore, Sileo's motion seeking to revoke the detention order of Magistrate Judge Roemer is DENIED.

SO ORDERED.

Dated:  April 5, 2020
        Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE